# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| JESSE C. TRENTADUE, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATE CENTRAL INTELLIGENCE AGENCY, *et al.*, <br><br> Defendants. | ORDER and MEMORANDUM DECISION <br><br><br><br><br> Case No. 2:08-CV-788 CW |

Plaintiff Jesse C. Trentadue brought this action under the Freedom of Information Act ("FOIA") to require production of information and records he requested. The Defendants are the United States Central Intelligence Agency, the Federal Bureau of Investigation and the FBI's Oklahoma Field Office. Generally speaking, Mr. Trentadue asserts that the CIA has withheld 12 documents from him in violation of FOIA. Now before the court are cross motions by Mr. Trentadue and the CIA seeking summary judgment in their favor. For the reasons discussed below, the court resolves both motions in favor of the CIA.

## BACKGROUND

On December 19, 2006, Mr. Trentadue submitted three FOIA requests to Defendants seeking information and records connected to the bombing of the Alfred P. Murrah Federal Building in Oklahoma City, Oklahoma, including any potential involvement of foreign nationals in that attack. The Defendants had not responded to the requests by October 10, 2008 and on that date, Mr. Trentadue brought this action.

On June 1, 2009, the CIA responded to Mr. Trentadue's FOIA requests by, in part, releasing redacted documents. Those documents contain little information other than the name of the person or agency to whom or to which they were directed: for all practical purposes the CIA completely withheld them. The CIA also advised Mr. Trentadue that it withheld other documents in their entirety and did not provide redacted copies of them. The CIA has created and produced a *Vaughn* index for all of the redacted and withheld documents. Further, the CIA has produced affidavits from Martha Lutz, a CIA information review officer, regarding the CIA's records search and factual bases for its claimed exemptions. Ms. Lutz was involved in conducting the records searches in response to Mr. Trentadue's requests, helping to prepare the *Vaughn* index, and reviewing and analyzing classified documents.

After the CIA made its final response to Mr. Trentadue, it made its present motion for summary judgment. In its motion, the CIA seeks a judgment that its responses to Mr. Trentadue comply with FOIA and that it has no further duty to respond to Mr. Trentadue's requests. In response, Mr. Trentadue filed a cross motion for summary judgment in which he narrows this dispute to 12 documents that he asserts the CIA should have provided to him either in their entirety or in redacted form. In doing so, Mr. Trentadue essentially concedes that judgment in the CIA's favor on all of the other withheld documents (as well as the CIA's search for all of the documents) is proper.

In particular, Mr. Trentadue contends that the CIA has not shown that the 12 specified documents meet any FOIA exemption. In the alternative, he argues that the documents should have at a minimum been produced to him in redacted form, in which only exempt material was excluded and non-exempt material was provided. He requests that court conduct an *in camera*

review of those documents to test the CIA's assertions regarding exemptions and to determine if there are portions of them that can be redacted to excluded exempt material but otherwise provided to him.

The CIA responds that each of the 12 documents specified by Mr. Trentadue fall into one or more exempted categories and may properly be withheld in their entirety. As support, the CIA points to its *Vaughn* index, in which the CIA describes the contents of each document and asserts the applicability of one or more of the FOIA exemptions, and to the affidavits of Ms. Lutz.

## ANALYSIS

**I.     Legal Standard**

"FOIA generally requires federal agencies to disclose agency records to the public upon request, subject to nine exemptions that protect certain types of documents from disclosure." *Stewart v. United States Dep't of Interior*, 554 F. 3d 1236, 1239 (10th Cir. 2009); *see also Trentadue v. Federal Bureau of Investigation*, 572 F.3d 794, 796 (10th Cir. 2009). Congress created these exemptions, set forth at 5 U.S.C. § 552(b)(1)-(9), because it "'realized that legitimate governmental and private interests could be harmed by release of certain types of information.'" *United States Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988) (citation omitted). Accordingly, courts should construe the exemptions "to have meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

Nonetheless, if a court finds that the agency withholding the documents has done so in violation of FOIA, it has the power to "enjoin the agency from withholding agency records and to order the production of any records improperly withheld." *Trentadue*, 572 F.3d at 797 (quoting 5

U.S.C. § 552(a)(4)(B)). The burden of showing that a document was properly withheld falls on the agency. *See Stewart*, 554 F.3d at 1244.

Generally speaking, a court may grant summary judgment if the record demonstrates that "there is 'no genuine issue as to any material fact' and that the moving party is 'entitled to judgment as a matter of law.'" *Pelt v. Utah*, 611 F. Supp. 2d 1267, 1277 (D. Utah 2009) (quoting Fed. R. Civ. P. 56(c)). "When reviewing a motion for summary judgment in a FOIA matter, the court reviews the agency's decision de novo" to determine whether the agency has met its burden of proving that any withheld information in responsive records properly falls within one of FOIA's exemptions. *Zanoni v. United States Dep't of Agric.*, 605 F. Supp. 2d 230, 236 (D.D.C. 2009). "[T]he Court may award summary judgment to an agency solely on the information provided in affidavits or declarations when they describe 'the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *Antonelli v. United States Parole Comm'n*, 619 F. Supp. 2d 1, 4-5 (D.D.C. 2009) (citations omitted). The agency's "affidavits or declarations are accorded 'a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *Harrison v. Executive Office for U.S. Attorneys*, 377 F. Supp. 2d 141, 146 (D.D.C. 2005) (citation omitted).

## II. Analysis of the 12 Withheld Documents

Because the analysis of whether a document falls into a FOIA exemption is fact specific, the court will conduct a document by document review below. The court will refer to the exhibits in the order in which they are attached to Mr. Trentadue's cross motion. For each

4

document, the court will consider the CIA's asserted exemption and Mr. Trentadue's argument as to why the exemption does not apply.

The one exception to this procedure is the issue of bad faith. After reviewing the pleadings and the *Vaughn* index and hearing oral argument, the court concludes that Mr. Trentadue has not made any credible argument or proffered any evidence that suggests that the CIA acted in bad faith in withholding any of the documents in this case.

Mr. Trentadue's arguments otherwise do not prevail. In support of his assertion of bad faith by the CIA, Mr. Trentadue argues that the CIA makes legal arguments that lack merit, did not attempt to segregate non-exempt material in the withheld documents, and did not respond to his FOIA requests for a long period. First, as explained below, the court disagrees that the CIA's legal arguments are without merit. Moreover, and also explained below, the CIA has established that the documents are all exempt in their entirety. Finally, Mr. Trentadue points to no authority suggesting that a long delay in responding to FOIA requests alone will support a finding of bad faith by a withholding agency.

As the court has found no indication of bad faith, it is satisfied that it may rely on the *Vaughn* index's descriptions of the withheld documents. *See Antonelli*, 619 F. Supp. 2d at 4-5. Accordingly, the analysis below centers on whether those descriptions are reasonably specific and whether the documents logically fall into an exemption.

**A.     Exhibit 1**

The *Vaughn* index describes Exhibit 1 as a five page fax, dated February 4, 1998, including a letter to an attorney in the Department of Justice from an attorney in the CIA. The *Vaughn* index entry explains that the letter relays the results of a CIA records search that the CIA

conducted at the DOJ's request. The entry further states that the CIA's search was prompted by a court order in the criminal prosecution of Timothy McVeigh. The CIA asserts the letter may be properly withheld in its entirety under Exemption b(5).

Mr. Trentadue asserts that the CIA's description of Exhibit 1 is inadequate to establish that the letter falls under Exemption b(5). He contends that to withhold this document under Exemption b(5), the CIA would have to establish that the letter was protected by the attorney client privilege. He argues that because the CIA does not assert that the letter was produced by an attorney representing the DOJ in response to a request for legal advice by the DOJ, it does not qualify for protection under that privilege. He further maintains that Exemption b(5) does not exempt facts and that the CIA should have produced portions of the document containing non-exempt facts.

After reviewing the *Vaughn* index entry for Exhibit 1, the court is satisfied that is reasonably specific in its description of the document. The court also concludes that the document logically falls under Exemption b(5), which covers intra-agency communications "which would not be available by law." 5 U.S.C. § 552(b)5). Mr. Trentadue is incorrect as a legal matter that to fall under Exemption b(5), a document must qualify as an attorney-client privileged communication. The exemption is broader, covering information protected from discovery under any theory. As explained in *Federal Trade Comm'n v. Grolier Inc.*, 462 U.S. 19, 26 (1983), the "test under Exemption 5 is whether the documents would be 'routinely' or 'normally' disclosed upon a showing of relevance." (Citation omitted).

The document at issue here, a CIA attorney's report of a court-ordered record search to a prosecutor in a criminal case, is not one that would be routinely turned over even if shown

relevant to the prosecution. Rather, it would be protected from disclosure by a straight forward application of the attorney work product doctrine. That is, the letter is the CIA attorney's description of records searched and presumably his or her summary of the contents and significance of those records. While the CIA attorney did not represent the DOJ, the letter was clearly transmitted in the context of a prosecution in which the CIA was cooperating with the DOJ, and one in which the court ordered the CIA to search for documents, aligning the interests of those two agencies.

Further, Mr. Trentadue is correct that facts are not covered by the work product doctrine. But while the underlying CIA records may have been discoverable by the defense, how the CIA attorney described the records and his or her mental impressions of them, which is what is contained in the letter, would not have been subject to discovery.

Finally, the CIA did not have to determine whether any portions of this document could have been segregated. As explained by the Ninth Circuit in *Pacific Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008), because attorney work product "shields both opinion and factual work product from discovery . . . if a document is covered by the attorney work-product privilege, the government need not segregate and disclose its factual contents." (Citations omitted). Accordingly, Exemption b(5) allows the CIA to withhold Exhibit 1 in its entirety.

**B.     Exhibit 2**

The *Vaughn* index describes Exhibit 2 as two fax sheets and a two page letter dated October 22, 1997 from a CIA attorney to an attorney at the DOJ. It contains information, legal analysis and opinion prepared by a CIA attorney in contemplation of the prosecution of Mr.

7

McVeigh. The letter was prepared in response to a DOJ attorney's request for information related to Mr. McVeigh's prosecution. The CIA asserts this document may be properly withheld in its entirety under Exemption b(5).

Mr. Trentadue argues that this document does not fall within the attorney work product doctrine and should have been produced in whole or part. This position is incorrect. While the *Vaughn* index's description of Exhibit 2 is more vague than that of Exhibit 1, the description is still reasonably specific. Moreover, for essentially the same reasons articulated regarding Exhibit 1, the court is satisfied that Exhibit 2 falls under Exemption b(5). Specifically, the CIA's description of Exhibit 2 signals that this communication contains the CIA attorney's mental impressions and legal analysis related to information relevant to the prosecution. It also contains the CIA attorney's description of that information. And it is clear that the CIA and DOJ were cooperating in the prosecution of Mr. McVeigh. The letter is clearly work product for those reasons. Finally, for the same reasons as already articulated above, the CIA did not have to attempt to segregate non-exempt material in Exhibit 2. Exemption b(5) therefore allows the CIA to withhold Exhibit 2 in its entirety.

### C. Exhibit 3

The *Vaughn* index describes Exhibit 3 as a document dated September 17, 1996 containing two fax sheets and a two page letter from a CIA attorney to a DOJ attorney. In that letter, the CIA clarifies prior correspondence regarding CIA record searches related to the prosecution of Mr. McVeigh and Terry Nichols. The CIA asserts Exhibit 3 may be properly withheld in its entirety under Exemption b(5).

Mr. Trentadue argues that this document does not fall within the attorney work product doctrine and should have been produced in whole or part. These arguments fail. The CIA's description of Exhibit 3 is reasonably specific and similar to that of Exhibit 1. Moreover, for the same reasons articulated regarding Exhibit 1, the court is satisfied that Exhibit 3 falls under Exemption b(5) and that the CIA did not have to attempt to segregate non-exempt material. Therefore, Exemption b(5) allows the CIA to withhold Exhibit 3 in its entirety.

**D.     Exhibit 4**

The *Vaughn* index describes Exhibit 4 as two pages of fax sheets and a four page letter dated January 4, 1995 from a CIA attorney to a DOJ attorney. It relates to any CIA involvement by a possible witness to the Oklahoma City bombing trial. It is classified as secret. The CIA asserts the letter may be properly withheld in its entirety under Exemptions b(1) and b(5).

Mr. Trentadue argues that this document does not fall within the attorney work product doctrine and should have been produced in whole or part. This position is incorrect. The CIA's description of Exhibit 4 is reasonably specific. Moreover, the court is satisfied that Exhibit 4 also falls under Exemption b(5) as attorney work product. The reason this letter was sent had to do with the DOJ attorney's trial preparation, and contained the CIA attorney's description of information and mental impressions. Further, the CIA was not required to segregate non-exempt material from this document. Thus, the CIA may withhold Exhibit 4 in its entirety under Exemption b(5).

Additionally, the CIA notes that this document has been classified as secret and asserts that it may be withheld under Exemption b(1). Mr. Trentadue does not challenge this designation or the applicability of Exemption b(1), the requirements of which are discussed below, and the

9

court believes those requirements are met for this document. Accordingly, the court finds in the alternative that Exemption b(1) applies to this document and allows the CIA to withhold it in its entirety.

E.     **Exhibit 5**

The *Vaughn* index describes Exhibit 5 as two pages of fax sheets dated April 19, 1996 and four pages of classified handwritten notes summarizing classified information that a DOJ attorney reviewed in connection with the Oklahoma City bombing prosecution. It is classified as secret. The CIA asserts that Exemption b(1) applies to allow the CIA to withhold this document in its entirety. Exemption b(1) allows material that is properly designated as classified to be withheld from disclosure under FOIA. *See* 5 U.S.C. § 552(b)(1).

Mr. Trentadue argues there is no showing that the DOJ attorney who prepared these notes had proper security clearance. He also asserts that the CIA should have produced any non-exempt material in this document.

Mr. Trentadue's arguments fail. First, the CIA's description of Exhibit 5 is reasonably specific. Second, Exhibit 5 logically falls within Exemption b(1). When an agency has withheld a document on the basis of Exemption b(1), courts "are to accord substantial weight to an agency's affidavit concerning the details of classification status of the disputed documents or records." *DiViaio v. Kelley*, 571 F.2d 538, 542 (10th Cir. 1978). Here, the *Vaughn* index and Ms. Lutz' affidavits both satisfy the court that this document is properly withheld under Exemption b(1).

Considering Mr. Trentadue's arguments, to the extent it matters here whether the DOJ attorney who made the notes marked classified had security clearance (and it is not clear that it

does), that fact can be inferred from the fact that he or she was allowed access to review classified documents. Further, Mr. Trentadue is correct that even when asserting the exemption for classified material in a document, a withholding agency must still produce any non-exempt material in that document. *See Founding Church of Scientology of Washington, D.C., Inc. v. Bell*, 603 F.2d 945, 950 (D.D.C. 1979). The CIA has shown that it appropriately considered whether there was non-exempt material in Exhibit 5. Specifically, Ms. Lutz states in her supplemental affidavit that the CIA conducted an analysis as to whether any material in any of the documents withheld under Exemption b(1) was non-exempt and concluded that there was no such material in any of the documents. Mr. Trentadue has not offered any reason to question Ms. Lutz' assertion about that analysis. Accordingly, Exhibit 5 is exempt from FOIA production in its entirety under Exemption b(1).

### F. Exhibit 6

The *Vaughn* index lists Exhibit 6 as a ten page fax, dated September 3, 1996 including an eight page letter from a CIA attorney to a DOJ attorney. This letter responds to the DOJ's request for information related to the Oklahoma City bombing trial. It is classified as secret. The CIA asserts that Exemptions b(1) and b(5) apply to allow the CIA to withhold this document in its entirety.

The CIA's description of Exhibit 6 is reasonably specific. Further, Exhibit 5 logically falls within Exemptions b(1) and b(5). Considering Exemption b(1), the *Vaughn* index and Ms. Lutz' affidavits both satisfy the court that this document is properly withheld in its entirety. Moreover, Exhibit 6 is also exempt in its entirety under Exemption b(5) for the same reasons

cited for Exhibits 1-4. Accordingly, the court is satisfied that the CIA may withhold this document in its entirety.

### G. Exhibit 7

Exhibit 7 is described in the *Vaughn* index as a two page cable dated April 21, 1995 relaying information about the Oklahoma City bombing that was provided to a U.S. Ambassador by a foreign official. It is classified as secret. The CIA contends that Exemption b(1) allows the CIA to withhold this document in its entirety.

The CIA's description of Exhibit 7 is reasonably specific. Moreover, considering the *Vaughn* index and Ms. Lutz' affidavits, it is clear that this document falls in Exemption b(1). Finally, the court is satisfied that the CIA conducted an analysis and concluded that none of the material in this document is non-exempt. Therefore, this document may be withheld in its entirety.

### H. Exhibit 8

The *Vaughn* index states that Exhibit 8 is a one page cable dated April 20, 1995 outlining a federal prosecutor's attempts to extradite an organized crime figure from another country. It is classified as secret. The CIA maintains that Exemption b(1) allows the CIA to withhold this document in its entirety.

The CIA's description of Exhibit 8 is reasonably specific. Moreover, considering the *Vaughn* index and Ms. Lutz' affidavits, it is clear that this document falls within Exemption b(1). Finally, the court is satisfied that the CIA conducted an analysis and concluded that none of the material in this document is non-exempt. Therefore, this document may be withheld in its entirety.

### I. Exhibit 9

In the *Vaughn* index, Exhibit 9 is identified as a three page cable dated May 10, 1995 relaying information provided by a foreign government about the possible identification of a suspect in the Oklahoma City bombing. It is classified as secret. The CIA contends that Exemption b(1) allows the CIA to withhold Exhibit 9 in its entirety.

The CIA's description of Exhibit 9 is reasonably specific. Moreover, considering the *Vaughn* index and Ms. Lutz' affidavits, it is clear that this document falls within Exemption b(1). Finally, the court is satisfied that the CIA conducted an analysis and concluded that none of the material in this document is non-exempt. Therefore, this document may be withheld in its entirety.

### J. Exhibit 10

Exhibit 10, as described by the *Vaughn* index, is a two page cable dated April 19, 1995. It relays information provided by a foreign liaison contact regarding the Oklahoma City bombing and is classified as secret. The CIA contends that Exemption b(1) allows the CIA to withhold this cable in its entirety.

The CIA's description of Exhibit 10 is reasonably specific. Moreover, considering the *Vaughn* index and Ms. Lutz' affidavits, it is clear that this document falls within Exemption b(1). Mr. Trentadue makes two arguments otherwise: that the document does not appear to him to involve national security or CIA sources and methods and that FOIA does not grant privacy rights. These argument do not meet or effectively rebut the *Vaughn* index or Ms. Lutz' affidavits. Finally, the court is satisfied that the CIA conducted an analysis and concluded that

none of the material in this document is non-exempt. Therefore, this document may be withheld in its entirety.

### K. Exhibit 11

As described by the *Vaughn* index, Exhibit 11 is a two page cable dated May 2, 1995 relaying information provided by a human source regarding the Oklahoma City bombing. It is classified as secret. The CIA contends that Exemption b(1) allows the CIA to withhold this document in its entirety.

The CIA's description of Exhibit 11 is reasonably specific. Moreover, considering the *Vaughn* index and Ms. Lutz' affidavits, it is clear that this document falls within Exemption b(1). Mr. Trentadue's arguments otherwise amount to speculation about who the source might be and whether it was legal for the CIA to contact the source. This argument does not meet or effectively rebut the *Vaughn* index and Ms. Lutz' affidavits. Finally, the court is satisfied that the CIA conducted an analysis and concluded that none of the material in this document is non-exempt. Therefore, this document may be withheld by the CIA in its entirety.

### L. Exhibit 12

The *Vaughn* index for Exhibit 12 indicates that it is a three page cable dated April 15, 1995 relaying background information on a source who provided information to the CIA about the Oklahoma City bombing. It is classified as secret. The CIA contends that Exemption b(1) allows the CIA to withhold this document in its entirety.

The CIA's description of Exhibit 12 is reasonably specific. Moreover, considering the *Vaughn* index and Ms. Lutz' affidavits, it is clear that this document falls in Exemption b(1). Finally, the court is satisfied that the CIA conducted an analysis and concluded that none of the

material in this document is non-exempt. Therefore, this document may be withheld in its entirety.

## III. *In Camera* Review

As a final note, the court will not conduct an *in camera* review of the 12 withheld documents. FOIA grants courts discretion in deciding whether an *in camera* review of documents is needed to make determinations about an agency's claimed exemptions in withholding all or part of documents. *See Anderson v. Department of Health and Human Servs.*, 907 F.3d 936, 942 (10th Cir. 1990). Generally speaking, a reviewing court need look no further than the *Vaughn* index and supporting affidavits unless those items merely track the statutory language or if there is evidence of bad faith. *See id. See also National Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978) ("The *in camera* review provision is discretionary by its terms, *and is designed to be invoked when the issue before the District Court could not be otherwise resolved*; it thus does not mandate that the documents be individually examined in every case.") (emphasis added). Considering Exemption b(1) in particular, the Tenth Circuit has cautioned that courts are ill-equipped to properly weigh national security interests and accordingly, "if the agency . . .diligently and conscientiously submits affidavits summarizing the matters withheld wherein it clearly indicates the rationale for the claimed exemption, the trial court need not undertake an in camera inspection of the documents." *DiViaio*, 571 F.2d at 543. As the Tenth Circuit has explained, if the mere possibilities that an agency was being less than honest or missed a few "bits of nonexempt material" were sufficient to trigger an *in camera* review, such a review would happen in every case. *See id.*

Here, the *Vaughn* index and the CIA's affidavits are sufficient for the court to conduct the FOIA analysis, particularly for Exemption b(1). That is because those submissions do more than mirror the asserted exemptions and are the clear result of diligent and conscientious efforts to review and analyze the documents. The documents contain specific detail and give credible explanations of why the withheld documents meet the claimed exemptions.

## ORDER

For these reasons, the court GRANTS the CIA's motion for summary judgment and DENIES Mr. Trentadue's cross motion for summary judgment.

SO ORDERED this 26th day of March, 2010.

BY THE COURT:

_____
Clark Waddoups
United States District Judge