IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JESSE TRENTADUE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CENTRAL INTELLIGENCE AGENCY, et al.<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER APPOINTING SPECIAL MASTER**<br><br>Case No.  2:08-cv-0788<br><br>Judge Clark Waddoups |

## INTRODUCTION

On July 29, 2014, during the bench trial of this matter held from July 28 to July 31, 2014, Plaintiff presented the court with allegations that Defendant FBI (the "Defendant") had engaged in witness tampering to prevent Mr. John Matthews from testifying remotely, as planned. The court requested Defendant to investigate the matter internally and report back to the court. (*See* Trial Tr. 7/29/14, at 5:10 – 8:21 [Dkt. No. 218].) Further discussion of the matter during the course of the trial left a colorable inference of witness tampering in the record that the court believed must be resolved. Accordingly, at the close of trial, the court set a further hearing for August 25, 2014 and ordered the FBI to produce Agent Adam Quirk, a Salt Lake City based FBI agent alleged by Plaintiff to have been involved in the witness tampering. (*See* Trial Tr. 7/31/14, at 160:2 – 167:12 [Dkt. No. 220].)

Before the August 25, 2014 hearing, however, Plaintiff filed a Motion to Strike the evidentiary hearing as noticed (Dkt. No. 191), and Defendant FBI filed a Motion to Strike (Dkt.

1

No. 203) two declarations submitted by Plaintiff, one from himself and one from his investigator Mr. Roger Charles, relating to their interactions with Mr. Matthews. The court therefore heard oral argument on these motions at the August 25, 2014 hearing instead of holding an evidentiary hearing on the witness tampering allegations at that time. Plaintiff explained that his motion was in essence a motion to expand the evidentiary hearing based on an email that Mr. Matthews had sent to Defendant's counsel and Plaintiff on August 2, 2014. (*See* Dkt. No. 191-10.) As a result of statements by Mr. Matthews in that email, Plaintiff wished to expand the evidentiary hearing to include individuals who had contact with Mr. Matthews.

The court found that "the current record at least permits a reasonable inference of wrongdoing by Defendant or its agents in influencing Mr. Matthews not to testify" and that this ambiguity "necessitates the evidentiary hearing for which Plaintiff has moved so that the court can exercise its ability to protect the integrity of its proceedings." (Mem. Dec. & Order dated Aug. 26, 2014, at 2-3 [Dkt. No. 213]) (internal quotation marks and alterations omitted). "An evidentiary hearing will allow cross-examination of those people with whom Mr. Matthews communicated about his upcoming trial testimony and his decision not to testify, such as Agent Adam Quirk, and Plaintiff and Mr. Charles, and will give Defendant, in its discretion, the opportunity to investigate the involvement of Mr. Don Jarrett, as mentioned in Mr. Matthews's August 2, 2014 email." (*Id.* at 4.) The court set the evidentiary hearing for November 13, 2014 and ordered Defendant to "conduct an investigation of any communications between the FBI and Mr. Matthews, or others acting at the behest of the FBI, including ascertaining what documents have been created relating to such communication and make a report to the court sufficiently in advance of the hearing so that Plaintiff can prepare subpoenas, if necessary, and prepare document requests. The court stresses that it wishes to resolve this issue based on the testimony and evidence offered at the evidentiary hearing." (*Id.* at 5.)

On November 5, 2014, one week before the scheduled evidentiary hearing, Plaintiff moved to vacate the hearing (Dkt. No. 229) because Defendant had not yet produced the report ordered by the court, leaving Plaintiff without sufficient time to prepare and serve subpoenas and document requests, as specifically referred to in the court's August 26, 2014 Order. The court granted Plaintiff's motion on November 6, 2014, stating that it was "perplexed as to Defendant's failure to comply with the order to conduct this investigation and provide the required report." (Order dated Nov. 6, 2014, at 2 [Dkt. No. 230].) The court ordered Defendant to appear at the scheduled hearing prepared to discuss "why it should not be found in contempt for failure to comply with the court's Order to conduct this investigation and provide the required report." (*Id.*) The court also requested "the parties to be prepared to discuss why the court should not appoint a special master to oversee the Defendant's compliance with court orders, particularly relating to the allegations of witness tampering, and with Plaintiff's FOIA request." (*Id.*)

Defendant produced the report on November 7, 2014 (Dkt. No. 231), albeit in redacted form and without the internally referenced appendices. (*See* Order dated Nov. 10, 2014 [Dkt. No. 236].) The court therefore ordered the "contempt hearing" to proceed on November 13, 2014. (*Id.* at 2.) On November 13, 2014, the court heard from the parties relating to the issue of contempt and as to the appointment of a special master. The court found that Defendant had not timely responded to the court's Order to produce the report of its internal investigation but reserved ruling on whether sanctions should apply because it found "follow-up investigation necessary to make the record complete enough to allow the court to resolve this question." (Order dated Nov. 13, 2014, at 2 [Dkt. No. 238].)

The court then directed the parties to brief the issue of appointing a special master to oversee the investigation of the allegation of witness tampering during the bench trial. (*Id.*) During the hearing, "[t]he parties agreed that if the court ultimately finds it appropriate to appoint a Special Master, Magistrate Judge Dustin B. Pead, to whom the case is already referred under 28 U.S.C. §

3

636(b)(1)(A) to handle discovery matters (*see* Dkt. No. 121), would be an acceptable choice." (*Id.*) In its Order, the court noted that during the hearing it had listed some of the ways "in which it would seem desirable for a Special Master to be involved in the present dispute," including by:

> (1) personally overseeing the process of taking depositions of Mr. Matthews, Mr. Jarrett, and Agent Quirk (and others, as relevant)—in which Plaintiff will be able to cross-examine these witnesses in the interest of completing the record on this issue—and pursuing such additional questions as he believes in his discretion are appropriate to make a complete record, (2) ruling on objections during such depositions or at other times in which this would be necessary, (3) taking evidence from Plaintiff and Mr. Charles, [and] (4) receiving and evaluating all internal FBI documents relating to the FBI's interactions with Mr. Matthews and the investigation of the witness tampering allegations and the preparation of the Inspection Division's Report (Dkt. No. 231). In addition to the suggestions made during the hearing, the court adds that it would seem desirable for the Magistrate Judge, acting in the capacity of a post-trial Special Master, to (5) prepare a Report and Recommendation, including proposed findings of fact and conclusions of law, on the witness tampering question, and (6) have the latitude to engage in *ex parte* communications with the court and with either party throughout the process at his instigation, in the interest of efficiency and practicality.

(*Id.* at 3.) The parties then briefed the issues on the schedule indicated by the court.

Plaintiff urges the court to appoint the special master both (1) to oversee the investigation of the witness tampering allegations and the report produced by the FBI, which Plaintiff argues was deficient, in response to the August 26, 2014 Order and (2) to monitor or steer additional searches for materials responsive to Plaintiff's FOIA request based on the court's May 13, 2011 Order, which Plaintiff alleges was not done as ordered. (Pl.'s Mem. Re: Appointment of Special Master 3 [Dkt. No. 240].)

Defendant objects to the appointment of a special master, arguing that the court "lacks jurisdiction under the FOIA to orchestrate investigations into the FBI's compliance with a 2011 Order that related solely to summary judgment proceedings." (Def.'s Resp. to Mem. Re: Appointment of Special Master 1 [Dkt. No. 241].) As to the witness tampering allegations, Defendant argues that because Defendant provided the report ordered by the court, the court's

4

"authority to issue a contempt finding to compel compliance with its August 26, 2014 order" has ended. (*Id.*) Moreover, Defendant argues that "there must be a sufficient factual basis suggesting that the FBI might actually have engaged in witness tampering before the Court can appoint a special master to conduct an investigation" of the witness tampering allegations. (*Id.* at 2.) According to Defendant, the report it submitted shows that "[n]o such factual predicate exists here." (*Id.*) Defendant suggests that the court "could simply ask Magistrate Judge Pead to review the unredacted transcripts, recordings, and other material that the FBI has already gathered, subject to the FBI's assertion of law enforcement privilege with respect to some of this material, and to make a report and recommendation regarding Plaintiff's witness tampering allegation based on those materials." (*Id.* at 2-3.)

## ANALYSIS

By statute, "[a] judge may designate a magistrate judge to serve as a special master pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts." 28 U.S.C. § 636(b)(2). Rule 53 of the Federal Rules of Civil Procedure authorizes the court, in its discretion, to appoint a special master to "address pretrial and posttrial matters," Fed. R. Civ. P. 53(a)(1)(C), including post-trial "investigations" of matters that "a judge might not feel free to undertake." Fed. R. Civ. P. 53, Advisory Committee Note of 2003, FEDERAL CIVIL JUDICIAL PROCEDURE AND RULES 243 (West 2015). The Advisory Committee Note of 2003 also explains that the "line" between when a special master is functioning as a pretrial, trial, or post-trial master "is not distinct." (*Id.*) "A pretrial master might well conduct an evidentiary hearing on a discovery dispute, and a post-trial master might conduct evidentiary hearings on questions of compliance" (*id.*), including, the court finds, compliance with previous court orders. Moreover, "in some circumstances a master may be appointed under

Rule 53(a)(1)(A) or (C) to take evidence and report without recommendations." (*Id.*) The court acknowledges that "[t]here is no apparent reason to appoint a magistrate judge to perform as master duties that could be performed in the role of magistrate judge." (*Id.*) Indeed, non-dispositive pretrial matters have already been referred to Magistrate Judge Pead in this case under 28 U.S.C. § 636(b)(1)(A). But "in special circumstances," the Advisory Committee has explained, "it may be appropriate to appoint a magistrate judge as a master when needed to perform functions outside those listed in § 636(b)(1)." (*Id.*) Such special circumstances exist here, where, in overseeing the investigation of the alleged witness tampering, the special master will need to "perform functions outside those listed" in his existing appointment under § 636(b)(1)(A).

In its Memorandum Decision and Order dated August 26, 2014, the court ordered an evidentiary hearing on the witness tampering allegations, explaining the problem these allegations pose for the integrity of the proceedings and the potential application of the "forfeiture doctrine" codified in Rule 804(b)(6) of the Federal Rules of Evidence, also referred to in case law as "waiver by misconduct," depending on the outcome of the evidentiary hearing. (Mem. Dec. & Order dated Aug. 26, 2014, at 2-3 [Dkt. No. 213].) This evidentiary hearing was also meant to "resolve [the] question of admissibility" of statements that would ordinarily constitute hearsay evidence, for example prior extra-judicial statements, in situations to which the Federal Rules of Evidence must be strictly applied. (*Id.* at 4.) Such hearsay evidence, however, may be considered in such an evidentiary hearing "conducted to resolve a 'preliminary question' about whether evidence is admissible." (*Id.* at 3 (citing Fed. R. Evid. 104(a) and *U.S. v. White*, 116 F.3d 903, 914 (D.C. Cir. 1997)).)

As the court noted, "[a]n evidentiary hearing will allow cross-examination of those people with whom Mr. Matthews communicated about his upcoming trial testimony and his decision not to

6

testify, such as Agent Adam Quirk, and Plaintiff and Mr. Charles, and will give Defendant, in its discretion, the opportunity to investigate the involvement of Mr. Don Jarrett, as mentioned in Mr. Matthews's August 2, 2014 email. (See Dkt. No. 191-10.)" (*Id.* at 4.) The evidentiary hearing could potentially have implications for the evidence adduced at trial, possibly requiring "application of the Adverse Inference Rule against Defendant should the court find, at the conclusion of the evidentiary hearing, that Defendant has 'wrongfully caused—or acquiesced in wrongfully causing—[Mr. Matthews's] unavailability as a witness, and did so intending that result.'" (*Id.* at 4-5 (quoting Fed. R. Evid. 804(b)(6)).) "This would have implications for Plaintiff's proffer of Mr. Matthews's testimony in the bench trial—possibly requiring, as Plaintiff has requested, the reopening of the bench trial 'for the limited purpose of allowing Plaintiff to put into evidence his proffer as to what Matthews told him about PATCON' (Pl.'s Resp. Def.'s Mot. Strike 11 [Dkt. No. 210])—because, under the Adverse Inference Rule, '[a]n attempt by a litigant to persuade a witness not to testify is properly admissible against him as an indication of his own belief that his claim is weak or unfounded or false.'" (*Id.* at 5 (quoting *Ty Inc. v. Softbelly's Inc.*, 353 F.3d 528, 534 (7th Cir. 2003)).)

In preparation for the evidentiary hearing, Defendant was to provide a report based on an internal investigation of the allegations, as discussed above. The report was not provided in time for Plaintiff to prepare subpoenas and/or request documents such that an evidentiary hearing would be substantively meaningful to the court in making these vital determinations. The report as presented did not dispel the court's concerns that an investigation into the allegations for purposes of gathering evidence is necessary.

It is undisputed that the court has the inherent power "to conduct an independent investigation in order to determine whether it has been the victim of fraud." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). But such an "independent investigation" into the witness tampering allegations—which must now include an independent review of Defendant's internal processes in preparing the report it submitted in addition to the task of gathering and preserving evidence in the

7

form of testimony and/or documents from Plaintiff, Mr. Charles, Mr. Matthews, Mr. Jarrett, Agent Quirk, and others who may surface as having been involved in interactions with Mr. Matthews, including based on any documents that must be produced as part of Defendant's internal investigation and/or that were used in the preparation of the report that was presented—by definition consists of investigative "duties that might not be suitable for a judge," Fed. R. Civ. P. 53, Advisory Committee Note of 2003, at 243, for example, where a bench trial has already been concluded in the matter.

Here, the court finds that it cannot "effectively and timely" oversee an investigation of this nature to enforce its August 26, 2014 Order. Fed. R. Civ. P. 53(a)(1)(C). And the court believes that appointing a special master to conduct this investigation will insulate the court and preserve its ability to maintain its objective role in adjudicating this matter between the parties. Moreover, a post-trial master's "role in enforcement may extend to investigation in ways that are quite unlike the traditional role of judicial officers in an adversary system." Fed. R. Civ. P. 53, Advisory Committee Note of 2003, at 243. Courts have relied on special masters for complex investigations and preservation of evidence under Rule 53. *See, e.g.*, *Hofmann v. EMI Resorts, Inc.*, 689 F. Supp. 2d 1361, 1367 (S.D. Fla. 2010). Although Magistrate Judge Pead is already assigned to this case under 28 U.S.C. § 636(b)(1)(A), he has not had any involvement in the bench trial that has already been concluded. The court believes he will therefore be able "effectively and timely" to oversee an investigation of the report and the witness tampering allegations in order to enforce the court's August 26, 2014 Order. As noted above, the parties agreed at oral argument that if the court ultimately finds it appropriate to appoint a special master, Magistrate Judge Dustin B. Pead would be an acceptable choice.

For the reasons stated above, the court finds it appropriate and necessary to appoint Magistrate Judge Pead as a post-trial special master under Rule 53(a)(1)(C) of the Federal Rules

of Civil Procedure. Magistrate Judge Pead will oversee the investigation into the report submitted by Defendant and into Plaintiff's allegations of witness tampering, as detailed below. At this stage of the proceedings, the court will not extend the special master's appointment to investigation of the sufficiency of Defendant's compliance with the court's May 13, 2011 Order relating to performing further FOIA searches. The court's ultimate findings relating to Defendant's FOIA obligations will depend on the outcome of this independent investigation into Plaintiff's witness tampering allegations. As noted above, depending on the outcome of the investigation, it might become necessary to reopen the bench trial to allow Plaintiff to make an evidentiary proffer. Any ultimate conclusion as to the FOIA searches, therefore, would be premature at this time.

     Separately, the court also ORDERS Defendant to produce to it the unredacted report together with the appendices that were withheld and STAYS other post-trial proceedings pending the outcome of the investigation of the allegations of witness tampering, as overseen by the special master.

[space intentionally left blank]

**ORDER APPOINTING SPECIAL MASTER**

The Court, upon consideration of the parties' proposals and recommendations regarding the appointment of a Special Master in this case, hereby ORDERS as follows:

Pursuant to Rule 53(a)(1)(C) of the Federal Rules of Civil Procedure, and exercising its inherent powers, the Court hereby APPOINTS Magistrate Judge Dustin B. Pead as Special Master in this action, effective immediately upon Judge Pead's filing an affidavit as required by Rule 53(b)(3)(A) of the Federal Rules of Civil Procedure stating that there are no grounds for disqualification under 28 U.S.C. § 455.

The powers and duties of the Special Master are limited to those specifically set forth herein. In overseeing this independent investigation, the Special Master shall not have the power to issue any orders or impose any sanctions except as specifically provided by Rule 53(c), including the authority to issue orders and sanctions as referred to in Rule 53(c)(1)(C) and (c)(2) and to rule on evidentiary objections or like matters at depositions. The court directs the Special Master to follow the guidelines and requirements of Rule 53 in all relevant and applicable respects.

### I.    RULE 53(b) APPOINTING ORDER

#### A.    POWERS AND DUTIES OF SPECIAL MASTER

1. The Special Master shall investigate, examine, and report upon Defendant's compliance with the court's Memorandum Decision and Order of August 26, 2014, and specifically the allegations of witness tampering involving Mr. John Matthews.

2. The Special Master shall collect from Defendant for *ex parte*, *in camera* review an unredacted copy of the FBI's internal report of the witness tampering allegations (Dkt. No. 231), together with copies of the appendices listed in the report's Table of Contents

and any documents relied upon or relevant to Defendant's internal investigation and/or that were used in the preparation of the report that was presented, including, but not limited to,

    (a)    copies of all recorded telephone calls and voicemail recordings between Mr. Matthews and the FBI, including between Mr. Matthews and Agent Quirk;

    (b)    copies of any transcripts prepared of those calls;

    (c)    any "302" reports and/or other reports prepared of interviews with Agent Quirk, Mr. Jarrett, and/or Mr. Matthews;

    (d)    any investigators' notes and/or recordings of interviews with Mr. Jarrett, Mr. Matthews, and Agent Quirk;

    (e)    any e-mails and/or other documents that Mr. Jarrett and/or Mr. Matthews gave to FBI investigators;

    (f)    all documents that record, refer to, or memorialize communications between Agent Quirk and/or others within the FBI regarding Mr. Matthews testifying in the instant case as well as records of all communications between Mr. Jarrett and/or Mr. Matthews and anyone within the FBI or the Department of Justice about Mr. Matthews.

3. In its *ex parte* submission to the Special Master, Defendant shall identify any information that it deems privileged. The Special Master shall also collect from the FBI for *ex parte*, *in camera* review any material the FBI may wish to submit in regard to such assertions of privilege. If disclosure of information identified as privileged is contemplated, the Special Master shall rule on any such assertions of privilege, subject to appeal to the court. Any filing or public release of material identified in Paragraph 2 shall be subject to and consistent with the resolution of any such privilege assertions.

4. The Special Master shall oversee the production to Plaintiff of the unredacted report and the appendices, if appropriate in his discretion after consideration of privilege claims, and any non-privileged documents relied upon or relevant to Defendant's internal investigation and/or that were used in the preparation of the report that was presented, as listed in Paragraph 2.

5. The Special Master shall attend the depositions of Mr. Matthews, Mr. Don Jarrett, Agent Quirk (and others, as relevant), as well as Plaintiff and Mr. Roger Charles, in which the parties will be able to cross-examine these individuals as to matters relevant to the witness tampering allegations, and, in the interest of ensuring the record is complete on this issue, he may pursue such additional questions or take such additional evidence as he believes in his discretion are appropriate for this purpose.

6. In addition, the Special Master shall also inquire into and report upon the following matters:

   (a) when the interviews with Don Jarrett, John Matthews, and Adam Quirk were completed by investigators from the Inspection Division;

   (b) when a draft or copy of the Inspection Division's report was first circulated and to whom it was circulated within the FBI and/or Department of Justice;

   (c) whether counsel for the FBI or any other Department of Justice Attorneys reviewed the report and, if so, who and when;

   (d) whether anyone other than personnel from the Inspection Division suggested changes to the report and, if so, who and what were the suggested changes, including any record of those suggested changes;

   (e) whether there were communications between the Inspection Division and anyone within the Department of Justice concerning the report prior to

       November 7, 2014 and, if so, who and when as well as the substance of any such communications, including any records of those communications;

    (f)    the scope of the investigation conducted by the Inspection Division, including all documents or communications that defined or limited the investigation that the Inspection Division was to conduct into the allegations of witness tampering;

    (g)    the lawfulness of and/or basis for the Inspection Division to redact or otherwise withhold from the court and Plaintiff materials referenced in its report, including the material identified in the appendices to that report; and

    (h)    if relevant, the possible motive of Defendant in persuading or otherwise influencing Mr. Matthews not to testify.

7. Upon the conclusion of his investigation, the Special Master shall prepare a Report and Recommendation, including proposed findings of fact and conclusions of law on Defendant's compliance with the court's Memorandum Decision and Order of August 26, 2014, specifically the allegations of the witness tampering involving Mr. Matthews.

**B.**    ***EX PARTE* COMMUNICATIONS**

In the interest of the efficient and timely resolution of this matter, and when functioning in his investigative rather than judicial capacity, the Special Master shall be authorized to engage in *ex parte* communications with the court and/or either party. However, *ex parte* communications shall be limited to those necessary, such as for example in connection with the Special Master's review of privileged documents and the FBI's claims of privilege. The parties shall be given reasonable notice and an opportunity to object before any *ex parte*

communications take place. Any ruling by the Special Master on such objections may be appealed to the court.

## C. NATURE OF MATERIALS TO BE PRESERVED AND FILED AS THE RECORD OF THE SPECIAL MASTER'S ACTIVITIES

The Special Master shall preserve and file, as an appendix to his Report and Recommendation, all materials reviewed by the Special Master, expressly identifying all evidence considered in making his recommendations. The Special Master shall file the Report and Recommendation and accompanying appendix on the docket by means of the Court's Electronic Case Filing System. Any motion or document shall be submitted and/or filed by the parties pursuant to instructions to be issued by the Special Master. Any document reviewed *in camera* and designated as privileged shall retain that designation and be filed under seal.

## D. TIME LIMITS AND STANDARD OF REVIEW FOR SPECIAL MASTER'S DECISIONS

The Special Master shall proceed with reasonable diligence and according to a scheduling order entered in consultation with the parties.

The parties shall be provided twenty-one (21) days from the filing of any Report and Recommendation in which to file objections. The court will review *de novo* all objections raised by the parties to the Special Master's findings of fact and conclusions of law. The Special Master's procedural rulings may be set aside for an abuse of discretion.

## E. COST TO THE PARTIES

Because the Special Master also serves as a Magistrate Judge of the court, he shall not be compensated for his work performed as Special Master. As a Magistrate Judge, the Special Master's expenses in attending depositions or for other such purposes will be covered by the court. The parties shall bear their own costs and expenses. However, in the event Defendant is

ultimately found to have engaged in witnesses tampering, Plaintiff may be able to recover costs and expenses upon relevant motion at that time.

Before incurring any costs, including any costs incurred by agents, experts, or other third-parties that the Special Master may, in his discretion, choose to employ for the purpose of carrying out his duties, the Special Master shall prepare and file a budget of estimated fees and costs. Any objections to the Special Master's budget must be made within five (5) days of its submission and will be resolved by the Special Master. Any ruling by the Special Master on such objections may be appealed to the court. After resolution of any objections, invoices for such costs or expenses shall be paid equally by the parties, provided, however, that in the event Defendant is found to have engaged in witnesses tampering, Defendant might be required to reimburse such costs. Pursuant to Rule 53(g)(3) of the Federal Rules of Civil Procedure, after ruling on any Report and Recommendation of the Special Master, the court will consider a motion of a party whether to amend this interim allocation of costs.

## II.   AMENDMENT OF RULE 53(b) APPOINTING ORDER

This Order may be amended at any time by the court after reasonable notice and an opportunity to be heard is provided to all parties.

## III.   DESIGNEES

The following persons shall be the Special Master's primary contacts with the parties:

For Plaintiff Jesse C. Trentadue, 8 East Broadway, Suite 200, Salt Lake City, UT 84111, Telephone: (801) 532-7300, E-Mail: jesse32@sautah.com.

For Defendant FBI, Kathryn L. Wyer and Adam C. Siple, United States Department of Justice, Civil Division, Federal Programs Branch, 20 Massachusetts Avenue, NW, Washington,

D.C. 20530, Telephone: (202) 616-8475, E-Mail: Kathryn.Wyer@usdoj.gov; adam.c.siple@usdoj.gov.

SO ORDERED this 30th day of April, 2015.

BY THE COURT:

_____
Clark Waddoups
United States District Judge