IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

CENTRAL DIVISION


In re:                        )
                              )
JESSE C. TRENTADUE,           )
                              )
          Plaintiff,          )
                              )
v.                            )Case No. 2:08-CV-788CW
                              )
UNITED STATES CENTRAL         )
INTELLIGENCE AGENCY,          )
                              )
          Defendant.          )


Final Pretrial Conference


BEFORE THE HONORABLE CLARK WADDOUPS

July 15, 2014


Karen Murakami, CSR, RPR
770 N. Northview Circle
Salt Lake City, Utah 84103
Telephone: 801-699-5782

<u>APPEARANCES OF COUNSEL</u>:


For the Plaintiff:    JESSE C. TRENTADUE
                      Attorney at Law
                      Suite 200
                      8 East Broadway
                      Salt Lake City, Utah 84111


For the Defendant:    KATHRYN L. WYER
                      Assistant U.S. Attorney
                      U.S. Department of Justice
                      Civil Division Federal
                      Programs Branch
                      20 Massachusetts Ave NW 7124
                      Washington, DC 20530

```
 1              Salt Lake City, Utah, Tuesday, July 15, 2014
 2                            *   *   *
 3              THE COURT:  Good morning.  We're here in the
 4    matter of Trentadue v. FBI, 2:08-cv-788.  Will the
 5    parties please state their appearance.
 6              MR. TRENTADUE:  Yes, Your Honor, Jesse
 7    Trentadue, pro se.
 8              THE COURT:  Thank you.
 9              MS. WYER:  Good morning Your Honor.  Kathryn
10    Wyer for the FBI.  And you may have noticed that I have
11    a co-counsel who has recently appeared and he had
12    intended to attend today, but he is having flight
13    delays, so he may show up later.
14              THE COURT:  Thank you.  I did notice he
15    entered a pro hac admission in this case.
16              Today is scheduled for a final pretrial
17    conference.  It seems to me that the first thing to
18    discuss is entrance of the joint pretrial order which
19    has been submitted.  In reviewing that it appears to me
20    that the order as submitted is appropriate with a couple
21    of exceptions.  The first exception is the paragraph --
22    let me get the right page, page 9, paragraph 5, which
23    refers to civil contempt.  And I think, as I discussed
24    last time, we're not going to try civil contempt.  I
25    would propose to simply cross that out and initial it.
```

```
 1    And the other change is similar, which is on page 13,

 2    which also is the paragraph that refers to civil

 3    contempt.  So what I would intend to do is just cross

 4    those two paragraphs out and initial the document.  Any

 5    other changes to the proposed joint final pretrial order

 6    that ought to be addressed before I sign it?

 7               MR. TRENTADUE:  No, sir.

 8               THE COURT:  From the FBI?

 9               MS. WYER:  Your Honor, just the pretrial

10    order contains many disputes over the positions.  Are

11    those going to be resolved before --

12               THE COURT:  They will be resolved at the

13    trial, but I think those state the issues that are going

14    to be addressed at trial.

15               MS. WYER:  Okay.

16               THE COURT:  Okay.  So with that, I will

17    sign -- those changes I will sign the pretrial order.

18    And there are a number of issues in which both of you

19    state your positions, but it seems to me that the

20    evidence and the arguments at trial will be important to

21    resolve those.

22               The second issue that we have is the -- find

23    it here -- the plaintiff's response to the defendant's

24    Rule 43(a) ruling, an objection -- well, I have the

25    objections of the United States to the 43(a) appearance
```

```
 1    and then the plaintiff's response to the 43(a) ruling.

 2    Is there anything further that needs to be heard on that

 3    before we proceed to trial?

 4              MR. TRENTADUE:  Yes, Your Honor.  We've also

 5    moved to include Mr. John Matthews as being allowed to

 6    testify by video conferencing.  Mr. Matthews is beyond

 7    the subpoena power.  And I think when you look at the

 8    case law that the government relies upon it doesn't

 9    really support the position they are taking with respect

10    to video conferencing because it's become a state of the

11    art, especially in this courthouse.  When you look at

12    the cases a lot of the old ones where witnesses were

13    going to testify by telephone and you couldn't see the

14    witness, you didn't know if there was someone sitting in

15    the room with the witness threatening them when they

16    were testifying.  And the cautions I've taken are these

17    are certified court reporting firms, the witnesses have

18    the exhibits, there will be no one in the room with them

19    other than a technical person, if necessary, it's on a

20    court secured system, and it's being -- the court and

21    the parties can view the witnesses.

22              THE COURT:  As things stand at this point

23    would you just list the witnesses you expect to appear

24    by videoconferencing.

25              MR. TRENTADUE:  Yes, sir.  Mr. Hardy has
```

 1   been served with a subpoena.  He's scheduled for

 2   July 30, 2014, at 8:30 a.m. our time.  Ms. Wyer's asked

 3   for -- and it's in Alexandria, which is within 10 miles

 4   or 15 miles of his home -- she's asked if we can move

 5   that to Winchester.  And I'll see what I can do, and if

 6   it can be done, we will do that, because there are only

 7   certain places the court reporters have a

 8   teleconferencing center.

 9            There will be Ms. Coverdale, Mr. Cooley, and

10   Mr. Browning, who are in the Oklahoma City.  And the

11   problem I have, Your Honor, and I wanted to discuss this

12   with the court today, I know Ms. Wyer doesn't know

13   exactly when her case is going to end, but the

14   difficulty with videoconferencing witnesses is you

15   reserve blocks of time, you just can't walk out in the

16   hall and bring them in.  And I propose, and it might

17   require interrupting Ms. Wyer's case, but either 10:00

18   a.m. on July 29th or 12:30 p.m.  I could finish those

19   witnesses within two hours I think.  And then, if the

20   court allows, it would be Mr. John Matthews at 1:00 p.m.

21   on July 30th.  He would be my last witness.

22            THE COURT:  All right.  Ms. Wyer, do you

23   have any response?

24            MS. WYER:  Your Honor, I would just note

25   that I didn't find any support for the idea that the

1    costs to the plaintiff is a factor that would qualify as

2    compelling circumstances, and that is the only factor

3    that the plaintiff has offered.  We don't even know

4    whether these witnesses would be willing to come or not.

5    So I would assume -- I would have to assume that they

6    would be willing to come if their costs were covered, so

7    the only factor that we know about is the costs to the

8    plaintiff of bringing them.

9              In regard to Mr. Matthews, the plaintiff has

10   cited concerns about his safety and has thus refused to

11   identify the location where he would testify from.  The

12   FBI objects to not being informed or provided with that

13   information.

14             And in regard to the timing, the FBI is

15   planning to have two -- at least two witnesses the

16   morning of the 29th, and we're trying to arrange that so

17   that they can testify and then return to Washington,

18   D.C. on that day.  So we would want them to go first

19   before any videoconferencing that the plaintiff does.

20   And at this point I really don't know how long the case

21   would take when you take into account cross-examination.

22   It could go through the first two days, and then in that

23   case I would -- I don't see why the plaintiff's

24   witnesses couldn't be left to the 30th.

25             THE COURT:  Let me respond.  First of all,

as to the United States' objections, I read the Tenth

Circuit case that the FBI cited, and I believe the

important points in that case are that the question of

appearance at a video or teleconferencing by remote

appearance is largely left to the judgment of the court

in terms of administering the evidence.  The standard is

an abuse of discretion, and in that case, the court,

Tenth Circuit, upheld the district court in deciding

that he was not going to allow the witnesses to appear

remotely.  I think that there are some significant

differences between that case and this case that makes

the remote appearance in this case appropriate.  First

of all, one of the most important rationales given by

the Tenth Circuit in that case was the fact that there

were alternative means to produce the testimony,

referring to the fact that depositions could be taken

and the testimony presented by depositions.

In this particular case, because of the

unique procedural status of the case, there is no

discovery, there is no alternative for the plaintiff to

present these witnesses by deposition, video or

otherwise.

Second, given the nature of this case, I

believe that there is good cause, because of the lack of

the ability to produce the witnesses, either compel

1    their attendance or to secure their attendance by video

2    deposition for them to appear remotely.

3              With respect to the Texas witnesses, I find

4    that the burden of cost, given the limited time that

5    they would be required to appear and the nature of this

6    case, makes it appropriate and that there is good cause

7    for them to appear remotely and that there will be no

8    prejudice and that there will be adequate safeguards in

9    place to assure that there's the opportunity for

10   cross-examination and no tampering with the witnesses.

11             With respect to Mr. Hardy, he is under

12   deposition to appear -- excuse me, under subpoena to

13   appear remotely.  I believe that that is appropriate.

14   The United States has refused to produce him

15   voluntarily, even though he has previously provided six

16   declarations in connection with this case, and I believe

17   that there is good cause and that it is appropriate

18   under Rule 43(a), and the objection of the United States

19   is overruled.

20             As to the timing, this is a bench trial, the

21   presentation of evidence can, under these circumstances,

22   easily be interrupted to accommodate the need for video

23   depositions.  If the United States wants to discuss with

24   Mr. Trentadue a time that they believe would fit in

25   their schedule, and if he's able to arrange alternative

1   times, the court would of course allow that.  If the

2   plaintiff, Mr. Trentadue, is unable to accommodate that

3   in terms of arrangements, either with videoconferencing

4   facilities or with the witnesses, then I will allow the

5   testimony to be interrupted and we will proceed on the

6   schedule that Mr. Trentadue has proposed.  I think that

7   resolves that issue.  And of course the United States'

8   objection is recognized and you have preserved that for

9   the record.

10          MS. WYER:  Your Honor, our witnesses who are

11  coming from Washington, D.C. I think their schedule

12  should take precedence over the plaintiff's

13  videoconferencing schedule, and they have -- also have

14  logistical limitations on their appearances.

15          THE COURT:  If you can work that out with

16  Mr. Trentadue to adjust to a different schedule, I'll

17  honor that.  If you're unable to work it out, we'll

18  proceed on Mr. Trentadue's schedule.  The United States

19  has significantly greater flexibility and resources to

20  deal with these issues than the plaintiff does in this

21  case, and I do not intend to give their testimony

22  priority in terms of the order of presentation.

23          MR. TRENTADUE:  Your Honor, there's also a

24  matter of my motion included in the response to take

25  Mr. Matthews.

1          THE COURT:  Mr. Matthews will be included

2     and allowed to testify also remotely.  Now, having those

3     two items been discussed and resolved, are there

4     additional items that we should discuss before trial,

5     additional issues to be resolved?

6          MR. TRENTADUE:  Yes, Your Honor.  I guess it

7     would be the question, and I don't know if it's -- is

8     how -- and it's so confusing because this being -- and,

9     again, it may be my poor research and skill -- and this

10    may be the first FOIA case ever going to trial.  And one

11    of the issues I think the court has to address and

12    address fairly soon is what is the nature of these

13    proceedings.  Is it a typical civil trial or does it

14    fall within that catchall provision under rule of

15    evidence 1101(d) which says the rules of evidence do not

16    apply to these proceedings, and it goes on to say

17    miscellaneous proceedings such as.  And it doesn't

18    list -- doesn't say miscellaneous proceedings, it says

19    such as, and then it lists extraditions or renditions,

20    warrants, seizures, summonses and etcetera.  And I

21    believe and would respectfully suggest to the court that

22    this is more like a probable cause proceeding for the

23    issuance of a warrant.  And when you look at how the

24    cases -- and there are not very many that have

25    interpreted that provision.  There was one case that we

1    cited to the court where it was whether to try a

2    juvenile as an adult, and the court said, based on 1101

3    it was most analogous to a preliminary hearing and,

4    therefore, suspended the full application of the rules

5    of evidence.  And in the second case it was a forfeiture

6    of property, and they don't really explain why, they

7    just reduced the standard to allow in hearsay evidence

8    and then they -- and I think that's because that's

9    analogous to a seizure.

10           I don't think this proceeding is analogous

11   to a typical civil trial.  It is something basically

12   unheard of.  And for that, while we would suggest that

13   under 1101 the rules of evidence should be suspended,

14   especially since it's a bench trial and especially since

15   to do so would comport with Rule 1102, which says these

16   rules should be construed so as to administer every

17   proceeding fairly and eliminate unjustifiable expense

18   and delay and promote the development of evidence law to

19   the end of ascertaining the truth and securing a just

20   determination.  I think that falls squarely in what I'm

21   requesting within the spirit and the purpose of the

22   Federal Rules of Evidence.

23           THE COURT:  Ms. Wyer, what's the position of

24   the FBI?

25           MS. WYER:  Your Honor, this is a civil

1    proceeding that is covered by 1101(b) which specifically

2    mentions civil cases and proceedings.  The normal

3    adversary process is going to occur here.  The issue to

4    be decided is the ultimate issue in the case, and that

5    distinguishes the situation here from any of the

6    situations in 1101(d).  And as you know, FOIA cases are

7    normally handled through summary judgment where the

8    rules of evidence do apply.  There's no reason to

9    suddenly suspend the rules of evidence now that the

10   court has decided there's a dispute of material fact and

11   we need to resolve those facts at trial.

12            To go to the cases, the court invited the

13   plaintiff to submit additional briefing on this issue,

14   and he did not do so.  I assume that that would resolve

15   the issue.  But the cases that the plaintiff cited in

16   the footnote, as he mentioned, one of them involved a

17   juvenile transfer proceeding.  That is a preliminary

18   proceeding in a criminal case that simply decides where

19   the proceeding is going to take place.

20            In the forfeiture context there is a statute

21   that governs forfeiture proceedings that requires the

22   government to make a preliminary showing of probable

23   cause.  This is discussed in the case cited in the case

24   that the plaintiffs cited, and the case that discusses

25   this is *United States v. One 56-foot Motor Yacht*, 702

1   F.2d 1276, Ninth Circuit, 1983.  It explains that the

2   probable cause determination is required by statute,

3   it's a preliminary determination in the case.  If we

4   were talking about the ultimate issue in the case, the

5   rules of evidence would apply.  This is just a

6   burden-shifting trigger, and that's why the court made

7   that determination there.

8            If you look at 1101(d)(3) and the types of

9   proceedings that it mentions, extradition or rendition,

10  issuing an arrest warrant, criminal summons or search

11  warrant, a preliminary examination in a criminal case,

12  sentencing, granting or revoking probation, considering

13  whether to release on bail, those are extremely far

14  removed from the typical civil case as the case that

15  will occur here in the FOIA context.

16           The court identified as the issue to be

17  decided at trial the adequacy of the FBI search, which

18  is the only issue that remains in the case and will be

19  the ultimate issue that will resolve judgment either in

20  favor of the government or in favor of the plaintiff.

21  This is the final proceeding that is going to occur, and

22  there is no reason to distinguish this from any other

23  civil context.  So the FBI's position is that the

24  Federal Rules of Evidence apply here.

25           THE COURT:  Anything further, Mr. Trentadue?

1          MR. TRENTADUE:  Yes, Your Honor.  It is not,

2    and I think the reasons, among others the court noted in

3    the ruling on the videoconferencing testimony, like a

4    normal civil proceeding, or even a normal criminal

5    proceeding where there is discovery and ability to

6    develop a full range of evidence.  You have none of that

7    in these proceedings in a FOIA case.  I think it falls

8    squarely under 1101(d) in that sort of miscellaneous

9    proceeding "such as."

10          THE COURT:  I believe that Ms. Wyer is

11   correct, that this is a civil proceeding and that the

12   rules of evidence do apply and should apply to the trial

13   of this matter.  I would note, however, that courts,

14   particularly in a bench trial, have the right and enjoy

15   the discretion to admit evidence that they believe is

16   reliable and is appropriate for the issues that are to

17   be preserved.  The unique nature of this case I think

18   makes it such that some of the evidence, perhaps much of

19   the evidence that will be offered by each side will be

20   relevant to the issue as to what information was

21   available to the FBI in determining what the reasonable

22   scope of the search would be.  In such cases the

23   evidence may be offered for reasons other than the

24   truthfulness of the hearsay statements or the

25   truthfulness of the information that's in the documents.

1   But it will largely be offered for the fact that the

2   documents exist, they could have been found, and that

3   the information was available to the FBI in terms of

4   developing the scope of the search and the

5   reasonableness of the search that was carried out in

6   light of that information.

7            Now, if there is a specific piece of

8   evidence that comes in that raises a question under the

9   rules of evidence, I will address it at that time.  But

10  generally I intend to apply the rules of evidence with

11  somewhat relaxed nature given the nature of the

12  circumstance, the nature of the proceeding, and the kind

13  of evidence that is relevant to the ultimate

14  determination.

15           Any additional issues that we need to

16  address?

17           MS. WYER:  Your Honor, the defendant had

18  raised authenticity objections with the plaintiff and he

19  has not responded, so -- permission to approach.

20           THE COURT:  Yes.  Okay.  And apparently

21  you're raising this objection with respect to --

22           MS. WYER:  Some of plaintiff's exhibits

23  that --

24           THE COURT:  Do you have the specific

25  exhibits that you want to address today?

1              MS. WYER:  I do not have them with me.  Some

2    of them have been filed previously on the docket.  Two

3    of them are videotapes where it is simply not known what

4    they are.  They are not from the FBI, so we simply would

5    need the authenticity to be established.  And there's

6    the timeline document, there's three different instances

7    where the timeline document appears.  This document has

8    never been officially acknowledged, as far as I know, by

9    any agency.  It's not an FBI document.  We do not know

10   what it is or what -- there's no way to assess its

11   reliability because it's simply not identified.  We

12   don't know who made it, we don't know why it was made,

13   we don't know who used it or how it was used, we don't

14   know what reliance was placed on it at the time it was

15   made.  We simply know nothing about it, and the

16   authenticity of that document needs to be established

17   before it's admitted into evidence.

18              The other exhibits are simply photographs

19   where we simply have no information about where those

20   photographs came from, when they were taken, or what

21   they purport to show.  So, again, we would insist that

22   some authentication of those documents be provided

23   before they are admitted.

24              THE COURT:  Mr. Trentadue, do you wish to

25   respond?

1          MR. TRENTADUE:  Yes, Your Honor.  My

2    understanding of the court's order that you had them

3    file the objections on authenticity was to give the

4    parties notice that there might be a foundation problem,

5    but the ultimate ruling would occur at trial once the

6    witnesses are put on to establish the foundation for

7    that document, which I intend to produce witnesses to do

8    that.  I also understood that the court was reserving

9    ruling on the objections until trial and that there was

10   no necessity of responding to a letter saying I object

11   to this -- exhibits.  And as far as the photographs,

12   those were included in letters to Ms. Wyer, who I

13   explained what they were and everything else and asked

14   questions about them and they're attached to that

15   correspondence.  The videotapes have been prepared and

16   presented to them.  They're self-explanatory too in

17   terms of what's on the labels and what's happening.

18          But following up in reporting to the court,

19   the parties have exchanged exhibits in compliance with

20   the court's order, and that was done fully in compliance

21   with the court's order on the timeline set forth in the

22   pretrial order.

23          THE COURT:  Given the fact that this is not

24   a jury trial, it is less important in this case to

25   establish before the trial begins the authenticity of

1    these documents, and as I previously indicated, I will

2    reserve ruling on them.  Of course, the United States

3    will have the ability to make any objection if there's

4    not adequate foundation as to the authenticity of any

5    document before it's received in evidence.  But given

6    the fact that we're going to proceed without discovery,

7    without the opportunity to authenticate some of these

8    documents in the usual way in a typical civil case, I

9    will allow the plaintiff to present evidence as to the

10   authenticity of the documents.  If the government

11   objects, I will rule on them at the time that they

12   are -- that that evidence is presented.

13          MS. WYER:  Sorry, Your Honor, I had only

14   raised this issue because at the end of last week's

15   proceeding I had asked specifically about authenticity

16   objections, and you said that you would hear them today.

17          THE COURT:  Yeah, I understand your reason

18   for raising it, but in practicality I believe the only

19   rational way to deal with these is to allow

20   Mr. Trentadue to present them and use the documents with

21   the witnesses and see if he can establish authenticity.

22   If he can, we'll proceed in that way; if he can't, I'll

23   hear the objections of the United States.  So we will

24   resolve those matters at trial.

25          MR. TRENTADUE:  There is one other document

1    matter I would suggest, sir, is that the parties be

2    required by July 23rd or 24th to submit to the court a

3    list of the exhibits to which they don't object.  And I

4    mean there are a number of the government's that I don't

5    have any objection to.

6            THE COURT:  Yeah, to the extent you can

7    agree to that --

8            MR. TRENTADUE:  Yes, sir.

9            THE COURT:  -- that will be fine.  If you

10   don't agree, it's going to be quite efficient in this

11   case to just rule on them as the documents are used.  I

12   think usually, or often, it is not an efficient use of

13   time to spend a lot of time talking about documents that

14   may or may not be used at trial.  So my preference and

15   practice is to deal with them when they become an issue

16   at trial.

17           MR. TRENTADUE:  I thought if we could agree,

18   then --

19           THE COURT:  If you can agree, that's

20   perfectly fine; if you don't agree, I'll deal with those

21   objections at the time the documents are used.

22           Anything further?

23           MR. TRENTADUE:  No, sir.

24           MS. WYER:  Yes, Your Honor.  We have various

25   issues with witnesses.  I wanted to inform the court

1    that one of the witnesses has had a name change.  So

2    Karen Lanning's current name is Karen Thiessen,

3    T-h-i-e-s-s-e-n.  We have another of the witnesses that

4    we had previously identified has had a very recent --

5    two deaths in her family, and she will not be able to

6    appear to testify.  And so we want to bring someone else

7    to cover the same -- basically the same information, and

8    her name is Monica Mitchell.  She's --

9              MR. TRENTADUE:  I couldn't hear the name.

10             MS. WYER:  Monica Mitchell.

11             THE COURT:  And the court will allow -- of

12   course, those kinds of substitutions often occur, and as

13   long as you give adequate notice to Mr. Trentadue that

14   you're going to substitute the witness, that will be

15   allowed.

16             MR. TRENTADUE:  I have no objection.

17             MS. WYER:  Thank you, Your Honor.

18             We also wanted to mention that in light of

19   some of the concerns that the court has expressed and

20   some of the rulings that it has made, we are considering

21   attempting to identify and bringing to testify one or

22   more case agents from the Oklahoma City bombing

23   investigation who would address their knowledge of the

24   existence of videotapes such as plaintiff has

25   identified.  And because those agents are no longer --

1    or seem to no longer be with the FBI, we have had

2    difficulties in locating them and contacting them, but

3    that is still in progress and we hope to know whether

4    that will be possible by the end of this week.  So we

5    would ask that we be allowed to add witnesses of that

6    nature, but if we could inform the court by Friday

7    whether that would happen, we would be willing to do

8    that.

9              THE COURT:  Any objection?

10             MR. TRENTADUE:  Yes, sir.  This is the kind

11   of information that should have been searched for and

12   produced long ago in this case.  And suddenly we're

13   hearing at the last minute, oh, we'll bring somebody

14   forward that says this evidence doesn't exist.  An

15   unknown person at this point in time I would object

16   strenuously to that, Your Honor, especially since in the

17   pretrial order, and I don't mean to misquote the

18   pretrial order, mis-cite the pretrial order, I don't

19   believe the government has made an issue out of the

20   existence or nonexistence of these tapes.

21             MS. WYER:  Your Honor, to be clear, we

22   believe that the existence or nonexistence of the tapes

23   is not an issue that should be required to be addressed

24   in the FOIA context.  However, given the court's -- some

25   of the court's statements and the plaintiff's arguments,

1    he is clearly making that an issue in the case, and we

2    should be allowed to respond to that if we are able to

3    find agents who could respond to that.

4             THE COURT:  Proceed by giving Mr. Trentadue

5    notice of the witnesses.  It seems to me that what

6    you're talking about is in the nature of rebuttal

7    testimony, and if at that point in the trial you believe

8    you need to call these witnesses as rebuttal testimony,

9    I'll hear any objections at that time, and, if

10   necessary, if there's some kind of prejudice or

11   surprise, I'll deal with that issue at the time.  But to

12   the extent -- and as soon as you can give Mr. Trentadue

13   notice of who you would propose to call, give him that

14   notice, and if he continues to object once he knows who

15   the witnesses are and what their proposed testimony will

16   be, I'll deal with it at that time.

17            MS. WYER:  Thank you, Your Honor.  We were

18   hoping to present these witnesses in our case-in-chief.

19   Rebuttal is another issue that I was wondering about

20   though with regard to how that would --

21            THE COURT:  Given the United States'

22   position that the existence of the tapes is not an

23   issue, it seems to me it's more in the nature of

24   rebuttal testimony.  I'm not sure that it matters

25   significantly, given the nature of the way this

 1   proceeding is going to go forward with the court as a

 2   bench trial, but if you want to call them, attempt to

 3   call them as a part of your case-in-chief, again, give

 4   Mr. Trentadue notice and I'll hear any objections at the

 5   time you propose to sponsor the witnesses.

 6           MS. WYER:  Thank you, Your Honor.

 7           THE COURT:  Anything further before we

 8   recess?

 9           MR. TRENTADUE:  No, sir.

10           THE COURT:  Ms. Wyer?

11           MS. WYER:  Your Honor, I just have a few

12   matters.  I wondered if the court has any particular

13   policies or preferences in a bench trial regarding

14   opening arguments, closing arguments, post-trial

15   briefing.  Will there be deadlines set for post-trial

16   briefing and things like that?

17           THE COURT:  My expectation is that once

18   we've completed the evidence we will have a transcript,

19   I'll ask each side to submit post-trial briefs, and I

20   will make my findings and conclusions based on the

21   post-trial briefs.  And before I do that will invite

22   closing arguments.  The usual practice is to get your

23   post-trial briefs, then hear closing arguments.  So

24   unless there is a different suggestion or desire by both

25   parties, that's how I intend to proceed.  So we'll take

1   the evidence, wait until we have a transcript, have

2   post-trial briefing, hear oral argument, then I'll make

3   the ultimate findings and conclusions.  That gives you

4   some guidance.  And we'll talk about the timing of that

5   once we get to that point in the trial.

6               MS. WYER:  Thank you, Your Honor.

7               THE COURT:  Anything further?

8               MR. TRENTADUE:  No, sir.

9               THE COURT:  Thank you.  We will see you on

10  trial.  If you need assistance, if you can't work out

11  the schedule of the witnesses and you have problems --

12  we'll proceed as you've indicated, but if you need my

13  assistance on some of those issues, I'll be available

14  and you can talk to me by telephone or we can schedule a

15  hearing.  We will be in recess.

16              MR. TRENTADUE:  Thank you, sir.

17              MS. WYER:  Thank you, Your Honor.

18              (Whereupon, the matter was concluded.)

19                         *   *   *

20

21

22

23

24

25

1                       C E R T I F I C A T E

2

3    State of Utah

4    County of Salt Lake

5

6         I, Karen Murakami, a Certified Shorthand Reporter

7    for the State of Utah, do hereby certify that the

8    foregoing transcript of proceedings was taken before me

9    at the time and place set forth herein and was taken

10   down by me in shorthand and thereafter transcribed into

11   typewriting under my direction and supervision;

12        That the foregoing pages contain a true and

13   correct transcription of my said shorthand notes so

14   taken.

15        IN WITNESS WHEREOF, I have hereunto set my hand

16   this  12th day of September, 2021.

17

18

19                              Karen Murakami

20                         Karen Murakami, CSR, RPR

21

22

23

24

25